IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CAROL HARTER                                                          PLAINTIFF

  V.     Civil No. 5:20-cv-5062-TLB-MEF

KILOLO KIJAKAZI[1], Acting Commissioner,
Social Security Administration                                        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Carol Harter, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration ("Commissioner") denying

her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental

security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter

"the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.  Procedural Background

Plaintiff filed her applications for DIB and SSI on May 16, 2017, alleging disability since

February 20, 2017, due to depression, a history of suicidal ideation, neuropathy in both feet,

fatigue, high blood pressure and increased heart rate, a history of mini strokes, sleep apnea, anxiety,

and a herniated disk at the L5-S1 level.  (ECF No. 15-3, pp. 5, 19, 37; ECF No. 15-5, pp. 2-10;

ECF No. 15-6, pp. 6, 19-20).  An administrative hearing was held on October 16, 2018.  (ECF No.

15-2, pp. 35-55).  Plaintiff was present and represented by counsel.

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Born in 1969, Plaintiff has a Bachelor of Business Administration with past relevant work experience in sales and telemarketing.  (ECF No. 15-6, p. 7, 21-28; ECF No. 15-11, p. 90).

On February 11, 2019, the ALJ found Plaintiff's back disorder, peripheral neuropathy, aortic stenosis, and obesity to be severe.  (ECF No. 15-2, p. 19).  He concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 21).  He ultimately found that she retained the RFC to perform a full range of sedentary work and, utilizing the Medical Vocational Guidelines ("the Grids"), determined she could perform her past relevant work ("PRW") as a telephone solicitor.  (*Id*. at 27).

Both parties have now filed appeal briefs (ECF Nos. 18, 19), and this matter is ready for Report and Recommendation.

## II.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Biestek Berryhill*, 139 S.Ct. 1148, 1154 (2019).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).  If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ adequately explained the reasons for his RFC determination and conclusion that her subjective complaints were not consistent with

the medical evidence, and (2) whether substantial evidence supports the ALJ's determination that she could return to her PRW.  The Court agrees that the ALJ's RFC determination is flawed.

The record exposes a medical history positive for a menagerie of physical impairments to include multiple traumatic brain injuries (TBIs), low back pain, intervertebral disk disorder with radiculopathy of the lumbar region, peripheral neuropathy, aortic stenosis, and obesity.  While the ALJ did find several of these impairments to be severe, his RFC determination does not properly account for the combined effects of her impairments.  When a Plaintiff has multiple impairments, the ALJ is required to consider the combined effect of those impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 CFR §§ 404.1523, 416.923.

At the age of five, Plaintiff fell off her bike and landed on the handlebars, puncturing her skull and meninges, and ultimately requiring brain surgery.  (ECF No. 15-7, pp. 88-90, 94-96; ECF No. 15-8, pp. 48-50, 55-57).  Years later, as a teen, she fell off the roof of her sister's car, suffering a left occipital skull fracture and concussion.  (*Id*.).  Due to her history, neurologist Ryan Kaplan ordered an MRI of her brain in April 2017, which showed some nonspecific white matter changes.  (ECF No. 15-8, p. 58).

In June 2017, Plaintiff advised Dr. Kaplan she had experienced impaired dexterity in her left hand since her TBIs and was now beginning to experience similar issues in her right hand.  (ECF No. 15-7, pp. 91-92; ECF No. 15-8, pp. 44-45, 52-53).  Dr. Kaplan prescribed occupational and physical therapy.  And, in September, he documented decreased dexterity in the hands, left more so than the right.  (ECF No. 15-8, pp. 41-43, 51).

In August 2017, Plaintiff's family physician, Mark Bonner, opined Plaintiff could only use her hands, fingers, and arms for 10% of the day to perform tasks such as grasping and twisting

4

objects, fine manipulation, and reaching (including overhead).  (ECF No. 15-7, pp. 144-148; ECF No. 15-11, pp. 31-35, 83-87).

In September 2017, Plaintiff complained of pain in her hands.  (ECF No. 15-9, pp. 78-82). Dr. Lauren Moore noted tenderness in the joints of both hands.

On her adult function report, Plaintiff also reported a loss of coordination in her left hand, as well as difficulty using her right.  (ECF No. 15-6, pp. 29-36).  This reportedly made tasks such as typing and operating a cash register impossible.

Dr. Bonner's second assessment, completed in September 2018, indicates Plaintiff's hand impairment somewhat improved.  (ECF No. 15-11, pp. 31-35, 83-87).  However, she could still only use her hands, fingers, and arms for 15% of the day.

The ALJ made no mention of Plaintiff's hand impairments.  Instead, he dismissed Dr. Bonner's assessments, finding that they were contradicted by the exams and findings or other more qualified specialists who failed to document any such restrictions.  In so doing, he ignored the fact that Dr. Kaplan documented some impairment in the function of her hands.   He also ignored Dr. Moore's assessment of tenderness in her hands.

Because most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions, and the position of telephone solicitor, as that position is generally performed, requires occasional reaching and handling and frequent fingering, we find that the ALJ should have at least discussed this impairment. *Titles II and XVI: Determining Capability To Do Other Work -- The Medical-Vocational Rules Of Appendix 2*, SSR 83-10, 1983 WL 31251, *5 (S.S.A. 1983); DICTIONARY OF OCCUPATIONAL TITLES § 299.357-014.  His failure to do so requires us to remand this case for further consideration.

The ALJ also failed to address Plaintiff's complaints of difficulty sitting. An MRI conducted in March 2017 revealed mild stenosis in the left paracentral region at the L5-S1 level, secondary to a disk bulge. (ECF No. 15-7, pp. 158-159). *See* Stephane Genevay, M.D. and Steven J. Atlas, M.D. and MPH, *Lumbar Spinal Stenosis*, *at* https://www.ncbi.nlm.nih.gov/pmc/articles /PMC2841052/ (noting that while sitting can alleviate pain in patients suffering from lumbar spinal stenosis, prolonged sitting can actually exacerbate the pain). A repeat MRI conducted in March 2018 revealed lumbar spondylosis with mild canal stenosis at the L4-5 level, moderate to severe bilateral neural foraminal narrowing at the L5-S1 level and left paraspinous muscle edema. (ECF No. 15-11, pp. 117-119). Plaintiff was prescribed narcotic pain medication, lumbar epidural steroid injections, facet injections and nerve blocks to treat her condition with only limited success. (ECF No. 15-8, pp. 3-5). While treatment notes document her satisfaction with the medications prescribed, they also evidence that her pain persisted, even worsening at times. And, contrary to the ALJ's finding, she necessitated both medication changes and dosage adjustments. Further, although her physicians documented that her condition had stabilized, based on our reading of those records, this did not mean that her pain was alleviated or even under control. It simply meant that her condition was unchanged from her previous exams. *See Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003) ("It is possible for a person's health to improve, and for the person to remain too disabled to work."); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("[T]he Commissioner erroneously relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."); *Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992) (holding that the fact that a

physician reported that the claimant was "doing well" could mean that they were "doing well for someone with a kidney transplant," not that they were not disabled).

In August 2017, a physical therapist indicated Plaintiff could tolerate sitting for no more than 45 minutes before experiencing pain. (ECF No. 15-10, pp. 128-135). That same month, Dr. Bonner opined Plaintiff could sit for 15-30 minutes at one time for a total of no more than 2 hours per 8-hour workday and would need periods of walking around during an 8-hour workday every 30 minutes for approximately 15 minutes; to shift positions at will; and to take 5-6 unscheduled breaks per day for 30-60 minutes. (ECF No. 15-7, pp. 144-148; ECF No. 15-11, pp. 31-35, 83-87). Additionally, he restricted her to occasional twisting, rare crouching/squatting, and no climbing.

On September 25, 2018, Dr. Bonner completed a second Medical Source Statement. (ECF No. 15-11, pp. 31-35, 83-87). He opined Plaintiff could sit for 30 minutes at one time for a total of less than 2 hours per 8-hour workday and stand/walk for 30 minutes for a total of less than 2 hours per workday and would need periods of walking around during an 8-hour workday every 30 minutes for approximately 15 minutes, the ability to shift positions at will, and to take hourly unscheduled breaks each lasting 30-60 minutes. Further, he found she could only occasionally twist, or stoop; rarely crouch/squat and climb stairs; and never climb ladders.

Numerous exams conducted over the relevant period documented tenderness in her lumbar spine, moderate pain with motion, and decreased sensation to light touch in the extremities. At times, she also exhibited a positive straight leg raise test bilaterally. In November 2017, Plaintiff exhibited severe pain with range of motion in the lumbar spine. (ECF No. 15-9, pp. 83-88). And, in January 2018, she reported persistent back pain and stiffness, further indicating that she experienced numbness in her leg when lying in certain positions. (ECF No. 15-10, pp. 145-147).

By the following month, her pain and numbness had worsened to the point she was barely able to sit or stand. (ECF No. 15-11, pp. 3-7). At this point, her pain specialist, Regina Thurman, switched her from Percocet to Dilaudid. Although this was initially successful, in June 2018, Plaintiff again reported severe back pain, stating that it was aggravated by bending, daily activities, lying, sitting, and standing. (ECF No. 15-10, pp. 154-159; ECF No. 15-11, pp. 8-17). Exams revealed moderate pain with motion in the lumbar spine.

On November 30, 2018, consultative examiner, Ahmad Al-Khatib, noted tenderness over the lumbosacral spinal region, diminished pinprick and light sensation over both feet, and an antalgic gait. (ECF No. 15-11, pp. 112-115). Despite nerve conduction studies showing no definite electrophysiologic evidence of lumbosacral radiculopathy, plexopathy, or peripheral polyneuropathy in the lower extremities, Dr. Al-Khatib diagnosed chronic low back pain, possible small fiber pure sensory peripheral neuropathy, and gait dysfunction. Although he was not asked to complete a formal RFC assessment, he indicated she would have mild limitations in "stating," standing, walking, and carrying objects. The ALJ did not recontact him for clarification of what was meant by mild limitations or "stating," though one could infer "stating" was a mere scrivener's error meant to read sitting.

We also note that Plaintiff's back impairment was complicated by the fact that she was morbidly obese. In early 2018, Dr. Brent Weilert indicated that spinal surgery was not an option for someone with a body mass index of 49. (ECF No. 15-10, pp. 141-144). Noting painful and restricted flexion and extension in the lumbosacral spine, her only option was to continue conservative measures with an emphasis on aggressive weight loss. And, despite her best efforts, which included exercise, diet modification, and medication, she was unable to lose the weight on

her own.  Accordingly, weight loss surgery was recommended but, because the procedure was not covered by her insurance, she was left with pain management as her only treatment option.

The ALJ concluded Plaintiff's obesity was not so severe as to interfere with her ability to perform sedentary work.  SSR 19-2p provides guidance for the evaluation of obesity in disability cases.  Although not a listed impairment, the "functional limitations" resulting from obesity might medically equal a listing when considered singularly or in combination with other impairments. *See Titles II and XVI: Evaluating Cases Involving Obesity*, SSR 19-2p, 2019 WL 2374244, *4 (S.S.A. 2019).[2]  SSR 19-2p recognizes that the combined effects of obesity with other impairments may be greater than the effects of either impairment considered alone. *Id*.  This is because obesity increases stress on an individual's weight-bearing joints, often contributing to limitations in range of motion in both the skeletal spine and the extremities. *Id*.  It may also limit or contribute to limitations in the individual's ability to sit, stand, walk, lift, carry, push and/or pull, climb, balance, stoop, and crouch. *Id*.  As it appears that Plaintiff's obesity limited her treatment options, despite her best efforts to lose the weight, we find that the ALJ failed to properly consider her obesity in combination with her other impairments, namely her back and hand impairments.

Moreover, the record does not support the ALJ's conclusion that the Plaintiff could perform a full range of sedentary work.  While he found the assessments of the non-examining physicians to be persuasive, those examiners concluded Plaintiff could perform light work.  (ECF No. 15-2, pp. 14-15, 28-30; ECF No. 15-3, pp. 50-52, 69-71).  Likewise, his reliance on Dr. Al-Khatib's unclear assessment of mild limitations is misplaced because individuals with "mild" limitations generally are not limited to sedentary work.  In fact, the only other assessment contained in the

---

[2] Interestingly, SSR 19-2p also recognizes that obesity can "affect a person's ability to manipulate objects, when there is adipose tissue in the hands and fingers.  The evidence of record does not indicate whether Plaintiff suffered from this condition, thus providing further support for the necessity of remand in this case.  We note, however, with a BMI of 49 it is quite possible Plaintiff exhibited fatty tissue in the hands and fingers.

record is that of Plaintiff's long-time treating physician, Dr. Bonner.  And it is this assessment that most closely aligns with the ALJ's RFC, although Dr. Bonner went a step further to conclude Plaintiff was not capable of even low stress work and would miss more than four days of work per month.  For the reasons previously explained, the ALJ found Dr. Bonner's assessments to be unpersuasive and concluded the Plaintiff could perform a full range of sedentary work.  *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) ("The ALJ may not simply draw his own inferences about [the claimant's] functional ability from medical reports.").  However, the Court does not find substantial evidence in the record to support this determination.

Accordingly, on remand, the ALJ is directed to recontact Dr. Al-Khatib to obtain clarification of his exam findings and to obtain an actual RFC assessment.  Further, the ALJ should ask Dr. Al-Khatib to evaluate Plaintiff's hands and include his findings in the RFC assessment.  Once this information has been received, the ALJ is directed to then reconsider all the Plaintiff's impairments, both singularly and in combination, before rendering an RFC.  Said RFC must account for all the Plaintiff's impairments, whether found to be severe or not severe.  *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, (S.S.A. 1996) 1996 WL 37418, *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.").

## IV.    Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 20th day of July 2021.

/s/ Mark E. Ford

HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE